**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| JARVIS GODWIN,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO.: 5:22-cr-9 |

## REPORT AND RECOMMENDATION

Movant Jarvis Godwin ("Godwin") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. Doc. 78. Respondent filed a Motion to Dismiss, and Godwin filed a Response. Docs. 81, 92. Godwin also filed an "Amended" § 2255 Motion. Doc. 91. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Godwin's § 2255 Motion, as amended, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I also **DENY** Godwin a Certificate of Appealability and *in forma pauperis* status on appeal.

## BACKGROUND

Godwin was charged with two counts of distribution of 5 grams or more of methamphetamine and one count of distribution of 50 grams or more of methamphetamine, all in violation of 21 U.S.C. § 841(a)(1). Doc. 1-1. If convicted, Godwin faced a sentence of not less than 5 years but not more than 40 years in prison on counts 1 and 2 and a sentence of not less than 10 years but not more than life in prison on count 3. Doc. 2. The Court originally appointed counsel to represent Godwin, doc. 5, but Godwin later retained counsel of his own

choosing. Docs. 28, 31. Not long after retained counsel, Kimberly Copeland, entered an appearance on Godwin's behalf, doc. 31, the Government notified the Court it had reached a plea agreement with Godwin. Doc. 39. Godwin agreed to plead guilty to a lesser-included offense of count 1 of the indictment and then faced a statutory sentence of no more than 20 years' imprisonment. Doc. 41 at 1, 2. District Judge Lisa Godbey Wood conducted a Rule 11, or change of plea, hearing. Doc. 40.

At the outset of the Rule 11 hearing, Judge Wood informed Godwin that the purpose of the hearing was to ensure that he understood the case pending against him and all the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charges to which he was pleading guilty, and pleading guilty was what Godwin wanted to do. Doc. 83 at 2–3. Godwin affirmed that no one was making him, pushing him, or leaning on him to change his plea. Id. at 3. During the plea hearing, Assistant United States Attorney ("AUSA") Brad Thompson provided the factual basis for Godwin's plea agreement by calling Drug Enforcement Agency Task Force Officer Alexander Gammon ("TFO Gammon") to testify. Id. at 18–23. Godwin stated that he did not disagree with anything TFO Gammon presented and admitted to the truth of TFO Gammon's testimony. Id. at 24. Judge Wood accepted Godwin's guilty plea, adjudged him guilty of a lesser-included offense of count 1 of the indictment, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR"). Id.

Judge Wood conducted Godwin's sentencing hearing on May 31, 2023. Doc. 70. Judge Wood reminded Godwin that he appeared with Ms. Copeland for the Rule 11 hearing and that Judge Wood had directed the Probation Office to prepare a PSR. Doc. 82 at 3. Judge Wood noted Godwin had objections to several paragraphs of the PSR, which concerned the drug

quantity calculation, career offender designation, criminal history calculation and category, offense level, and not getting a reduction for acceptance of responsibility. Id. at 4. After Ms. Copeland made extensive argument regarding Godwin's objections and the presentation of evidence and testimony, Judge Wood adopted the probation officer's factual statements and conclusions about the applicable advisory Sentencing Guidelines, resulting in a total offense level of 32 and criminal history category of VI. Id. at 150. The Guidelines' range was 210 to 240 months' imprisonment with a statutory maximum of 20 years' imprisonment.[1] Id. at 151. Ms. Copeland and AUSA Thompson provided further argument, and Godwin also addressed the Court. Id. at 152–54. Judge Wood then informed Godwin she had read the PSR, listened to the attorneys and Godwin, thought about the 18 U.S.C. § 3553 factors, and considered Godwin's criminal history. Id. at 154. Based on all these factors, Judge Wood sentenced Godwin to a 188-month sentence, which was a downward variance and included Judge Wood's consideration of Godwin's acceptance of responsibility under § 3553. Id. at 154–55.

Godwin filed the instant § 2255 Motion, as amended. Docs. 78, 91. Godwin asserts that his trial counsel provided ineffective assistance because she did not argue about a mixture of methamphetamine during sentencing, doc. 78 at 4, and because counsel did not argue against any career offender designation, doc. 91 at 22. Godwin also asserts that trial counsel had a conflict of interest because she represented a person who cooperated against him. Doc. 78 at 5. The

---

[1] Godwin's Guidelines range was actually 210 to 262 months with a criminal history score of 32 and history category of VI. Sent. Table (2021). However, this is immaterial since Godwin's statutory maximum sentence was 240 months (or 20 years).

Government filed a Motion to Dismiss. Doc. 81. Godwin filed a Response.[2] Doc. 92. This matter is fully briefed and ready for review.

## DISCUSSION

### I. The Court Should Deny Godwin's Claims of Ineffective Assistance of Counsel

A movant bears the burden of showing entitlement to relief under § 2255. Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017). A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance. Davis v. United

[2] Godwin also filed an amendment to his § 2255 Motion, to which the Government did not respond. Doc. 91. However, the Court can analyze Godwin's claims without benefit of any response based on the record before the Court. In addition, Godwin's amendment is, in essence, the same as his Response to the Motion to Dismiss. Compare Doc. 91 at 13–36 with Doc. 92 at 4–23.

States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11,

2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

**A. Sentencing Claim**

Godwin asserts that Ms. Copeland never spoke to him about contesting the purity of methamphetamine and using a mixture of methamphetamine substance instead for sentencing purposes. Doc. 78 at 5. Godwin states his Guidelines range would have been different if Ms. Copeland had argued that a mixture of substance had been used to calculate the drug weight for sentencing purposes, rather than the actual methamphetamine. Id.

The Government asserts the base offense level that would ordinarily apply under the Guidelines did not apply in this case because Godwin was sentenced under the career offender provisions; thus, his Guidelines range would have been the same, regardless of the use of a mixture for sentencing purposes. Doc. 81 at 4–5. In addition, Ms. Copeland did make the argument Godwin contends she should have raised. Further, Judge Wood made it clear she

would have imposed the same sentence she did based on the § 3553 factors, regardless of the Guidelines argument. Id. at 5.

Ms. Copeland raised an objection to the drug calculation because she said she and the Government had agreed to use a mixture of methamphetamine for sentencing purposes, not to rely on the actual methamphetamine (as contemplated in the PSR). Doc. 82 at 6. Ms. Copeland stated the Government should "stick to the agreement that it's a mixture and not actual methamphetamine." Id. AUSA Thompson stated the plea agreement contained accounting for a mixture, but this was immaterial because Godwin is a career offender. Id. at 124. During the sentencing hearing, Judge Wood noted Godwin's objections to the drug weight and stated the weight determination did not impact the Guidelines, though she did find by a preponderance of the credible evidence the information in the PSR regarding drug weight was accurate. Id. at 145.

Ms. Copeland did raise the issue of using a mixture versus actual methamphetamine during the sentencing proceedings, but the argument was unsuccessful. Even if Ms. Copeland had failed to raise this issue during sentencing, Godwin cannot show he would have been prejudiced by this failure. Judge Wood considered the Sentencing Guidelines and the § 3553(a) sentencing factors and even noted the weight was irrelevant to the sentencing since Godwin is a career offender under the Guidelines. The Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Godwin's § 2255 Motion.

**B. Career Offender**

Godwin argues that Ms. Copeland was ineffective because she did not object to or argue against Godwin's career offender designation. Doc. 92 at 16. According to Godwin, he only had one qualifying prior conviction and, thus, was not a career offender at the time of sentencing. Id. at 15. Godwin states that Ms. Copeland assured him she would be able to object a career

offender designation because Judge Wood would "undoubtedly see [things] her way" due to Ms. Copeland's personal relationship with Judge Wood. Id. at 7–8. In addition, Godwin states that Ms. Copeland presented him with a plea agreement with a sentencing range of 72 to 96 months in prison, and he was "shocked" when the PSR contained a sentencing range that was double the range that Ms. Copeland presented. Id. at 7.

As noted, a movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams, 2019 WL 4643730, at *1. A defendant is considered a career offender for purposes of sentencing if, among other things, the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense" and his "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." United States v. Dupree, 57 F.4th 1269, 1271 (11th Cir. 2023) (quoting U.S.S.G. § 4B1.1(a)). A controlled substance offense under Sentencing Guideline § 4B1.2 includes a felony offense prohibiting "the manufacture, import, export, distribution, or dispensing of a controlled substance . . . with intent to . . . distribute . . . ." U.S.S.G. § 4B1.2(b)(1).

Here, the probation officer determined Godwin qualified as a career offender based on two previous State controlled substance offenses and the controlled substance offense involved in this case. Doc. 50 at 12. The probation officer initially noted Godwin's offense level was 29 and he was in criminal history category VI, which carried a Guidelines' range of 151 to 188 months in prison, and the statutory maximum sentence was 20 years in prison. Id. at 26. Ms. Copeland lodged objections to Godwin's classification as an armed career offender. Doc. 53-1 at 3–6. The probation officer addressed these objections as part of the addendum to the final PSR.

Doc. 54 at 26–31. The probation officer revised the PSR, which superseded the original PSR, and determined Godwin had an offense level of 32 and a criminal history of VI. This resulted in a sentencing range of 210 to 262 months in prison but, because the statutory maximum sentence Godwin faced was 20 years' imprisonment, his Guidelines range became 210 to 240 months in prison. Doc. 66 at 20.

Ms. Copeland made an objection to the career offender designation at sentencing. Ms. Copeland argued that the Court had discretion to apply this enhancement, Godwin had "already served his time[,]" and the enhancement was not contained in the plea agreement. Doc. 82 at 6–7. Judge Wood addressed Godwin's objections to the PSR, stating, "Clearly, Mr. Godwin qualifies as a career offender given his particular criminal history." Id. at 146. Judge Wood overruled Godwin's objections regarding the career offender provision. Id.

Godwin's assertion that Ms. Copeland did not object to the career offender enhancement is directly contradicted by the record. To the extent Godwin asserts that Ms. Copeland rendered ineffective assistance by failing to object to this enhancement because Godwin did not have the requisite prior convictions for the enhancement, such an argument is wholly without merit. Godwin appears to argue that his conviction in Ware County Superior Court Case Number 17R-062 is the only prior conviction that could count toward his career offender enhancement. Doc. 92 at 14–15, 24. However, in addition to the 17R-062 conviction, Godwin's conviction in Ware County Superior Court Case Number 12R-204 also counted toward his career offender designation. Doc. 50 at 12; Doc. 54 at 6; Doc. 66 at 6. As Godwin had at least two prior felony convictions for controlled substance offenses and the offense for which he was prosecuted in this Court was also a qualifying controlled substances offense, Godwin qualified as a career offender. U.S.S.G. § 4B1.1(a). Godwin has not shown that Ms. Copeland performed deficiently on this

ground and, even if he had, he fails to show he was prejudiced by Ms. Copeland's failure to make the exact argument Godwin wanted Ms. Copeland to make.

Further, there is no evidence that the plea agreement contained a provision with an estimated Guidelines' range. Rather, the plea agreement contained a provision indicating the statutory maximum for the lesser included offense was 20 years in prison, Godwin could not be sentenced to any more than 20 years, no one had promised Godwin a sentence or a sentencing range, and the Court would use the Sentencing Guidelines and 18 U.S.C. § 3553(a) sentencing factors, including relevant conduct, in determining Godwin's sentence. Doc. 41 at 2–3. While Ms. Copeland argued for a sentence in the 77- to 96-month range in her objections to the initial PSR and during sentencing, doc. 53-1 at 6; doc. 83 at 139, there is nothing before the Court indicating a plea agreement or any other record evidence exists with this alleged promised sentence contained in it. Godwin does not meet either prong of Strickland.

## II. The Court Should Deny Godwin's Claims Relating to an Alleged Conflict

According to Godwin, Ms. Copeland represented Tony Street on state court drug charges and Mr. Street cooperated against Godwin. Doc. 78 at 5; Doc. 92 at 12. Godwin states Ms. Copeland should have recused herself from representing him once his sister and Mr. Street met with Ms. Copeland to discuss representation of Godwin and payment of Godwin's fees. Godwin asserts his sister asked Ms. Copeland if there would be a conflict of interest if she represented Mr. Street and Godwin, and Ms. Copeland assured Godwin's sister there was no conflict. Doc. 92 at 6. Godwin maintains his family committed their property as collateral for Ms. Copeland's fees and that property is now in Ms. Copeland's name. Id. at 11.

Godwin also states that Ms. Copeland informed him Judge Wood "trained her" so Judge Wood would "go along with" the plea agreement. Doc. 78 at 5. Godwin contends Ms. Copeland coerced him into pleading guilty, rendering his plea unknowing and involuntary. Doc. 92 at 12.

"'The Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest.'" Clark v. United States, No. CR610-002, 2011 WL 2174425, at *3 (S.D. Ga. May 16, 2011), report and recommendation adopted, 2011 WL 2173704 (S.D. Ga. June 2, 2011) (quoting Lynd v. Terry, 470 F.3d 1308, 1318 (11th Cir. 2006)). "A defendant's right to effective assistance of counsel is violated when the defendant's attorney has an actual conflict of interest that impacts the defendant adversely." United States v. Valois, 915 F.3d 717, 727 (11th Cir. 2019). "To prove ineffective assistance based upon a conflict of interest, movant must show: '(a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance.'" Id. (quoting Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001)). "'Only when a defendant shows that his counsel actively represented conflicting interests does he establish an actual conflict under the Sixth Amendment.'" Kennedy v. United States, 799 F. App'x 697, 700 (11th Cir. 2020), cert. denied, 141 S. Ct. 319 (quoting Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004)).

**A. Actual Conflict**

"An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004) (quoting Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987)). To prove an "'actual conflict' hindered [movant's] lawyer's performance, [a movant] 'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his or her interests." Id.

(quoting Smith, 815 F.2d at 1404; Oliver v. Wainwright, 782 F.2d 1521, 1524–25 (11th Cir. 1986); and Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999)).

Godwin does not allege, much less prove, any facts that suggest Ms. Copeland had an actual conflict of interest. Instead, he states Ms. Copeland was representing Mr. Street in a state court drug case prior to accepting representation of Godwin and Mr. Street cooperated against him (Godwin). But Godwin does not provide any details about the nature of Ms. Copeland's representation of Mr. Street, such as whether Mr. Street's case was related to Godwin's. Godwin also fails to explain how or when Mr. Street is alleged to have cooperated against Godwin, other than stating Mr. Street was a confidential informant.[3] Doc. 92 at 12. Godwin offers only conclusory allegations. Godwin has failed to show an actual conflict existed, even if Ms. Copeland represented both him and Mr. Street simultaneously.

**B. Adverse Impact**

Even assuming Godwin had shown an actual conflict, he must show this actual conflict adversely affected him. This "fact-specific inquiry requires the defendant to make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his interests. A mere speculative, hypothetical, or possible conflict of interest is insufficient to establish an ineffective-assistance claim." Kennedy, 799 F. App'x at 700 (citation omitted). "To prove adverse effect, the '[movant] must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative

[3] Godwin claims Ms. Copeland tried to steal his family's home and property in her pursuit of financial gain when she knew "she was creating a conflict of interest[.]" Doc. 92 at 17. This contention is wholly unsupported. A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense.'" Id. (quoting Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001)).

Presumably, Godwin contends that the purported conflict of simultaneous representation of another person (Mr. Street) adversely affected him (Godwin) because Ms. Copeland coerced Godwin to plead guilty.[4] Doc. 92 at 12. However, Godwin fails to present a plausible alternative that could have been pursued, that this alternative would have been reasonable under the facts, or a link between any conflict and the decision not to pursue an alternative existed. Godwin fails to meet the criteria for showing this adverse effect. Moreover, the record belies any notion that Godwin's plea was not knowing, intelligent, and voluntary.

When a defendant enters a guilty plea during Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The assistance of counsel

---

[4] Even if Mr. Street were the confidential informant who made a controlled buy with Godwin and Ms. Copeland represented Mr. Street at the time she represented Godwin, Godwin does not allege (or prove) that this alleged concurrent representation meant that Ms. Copeland had inconsistent interests. And, as discussed in the body of this Report, even if an actual conflict existed leading to him being coerced to plead guilty, Godwin fails to show an adverse effect.

received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), report and recommendation adopted, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." Lee v. United States, 582 U.S. 357, 364 (2017). "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted). A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163

(2012)). "Further, the decision to reject the plea must have been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

As noted, Ms. Copeland and Godwin were able to reach a plea Godwin agreed to plead guilty to a lesser-included offense of count 1 of the indictment and then faced a sentence of no more than 20 years' imprisonment. Doc. 41 at 1, 2. Judge Wood conducted a Rule 11, or change of plea, hearing. Doc. 40.

At the outset, Judge Wood informed Godwin the purpose of the hearing was to ensure he understood the case pending against him and all the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charges to which he was pleading guilty, and pleading guilty was what Godwin wanted to do. Doc. 83 at 2–3. Godwin affirmed that no one was making him, pushing him, or leaning on him to change his plea. Id. at 3. After being sworn in, Judge Wood told Godwin he did not have to plead guilty. Id. at 7. Judge Wood also told Godwin, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain

silent. Id. However, Judge Wood cautioned Godwin that he would be waiving these rights if he pleaded guilty and she accepted that guilty plea. Id. at 8. Godwin stated he understood. Id. Godwin also stated he and Ms. Copeland had had the opportunity to talk about the facts and the law pertaining to his case and the indictment filed against him, as well as about the proposed plea agreement and the application of the advisory Sentencing Guidelines in general terms. Id. When Judge Wood asked Godwin whether he was satisfied with Ms. Copeland's representation, he replied he was and had no complaints whatsoever about Ms. Copeland. Id.

Judge Wood reviewed the indictment with Godwin and the essential elements of the crimes charged. Id. at 9–10. However, Judge Wood noted under the agreement the parties wished to enter, Godwin agreed to plead guilty to a lesser included offense of count 1 of the indictment. Id. at 9. Judge Wood also noted, for Godwin to be convicted of the lesser-included offense, the Government would have to prove the essential elements of the offense. The elements of the lesser-included offense of count 1 were: first, Godwin knowingly and intentionally distributed a mixture or substance containing a detectable amount of methamphetamine; and second, the substance was methamphetamine, a Schedule II controlled substance. Id. at 10. By pleading guilty, Judge Wood noted Godwin was admitting the essential elements of the crime to which he intended to plead guilty were satisfied. Judge Wood advised Godwin of the maximum sentence she could impose, which was not more than 20 years. Id. Moreover, Judge Wood explained to Godwin, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at 11. In her consideration of his sentence, Judge Wood also explained some of the "major factors" she would have to take into account were Godwin's criminal history, his role in the offense, and whether he was truthful and accepted responsibility for his actions. Id. at

12. Godwin affirmed no one had promised him an exact sentence and Ms. Copeland had his permission to negotiate a plea agreement with the Government. Id.

Judge Wood asked the AUSA to summarize the provisions of the plea agreement. AUSA Thompson stated the material provisions were:

> Defendant will plead guilty to a lesser included offense of Count 1 of the indictment.
>
> If [t]he Court determines that Defendant qualifies for an adjustment under United States Sentencing Guideline [§] 3E1.1(a) and the offense level prior to that adjustment is 16 or greater, the Government will move for an additional one-level reduction in the offense level.
>
> At sentencing the Government will move to dismiss any other counts of the indictment that remain pending against the defendant, that being Count 2 and Count 3.
>
> The parties have signed an addendum to the plea agreement, which is included, in which the Government agrees to recommend the low end of the applicable [S]entencing [G]uidelines determined by [t]he Court at sentencing.
>
> Defendant waives his right to appeal on any ground with only three exceptions, and I'm sure Your Honor will go over the three exceptions with Mr. Godwin. He entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including[,] but not limited to[,] a 28 [U.S.C. §] 2255 motion. The only exception is that the defendant may collaterally attack the defendant's conviction and sentence based on a claim of ineffective assistance of counsel.
>
> The defendant waives all rights to request information about the investigation and prosecution of Defendant's case under the Freedom of Information Act or the Privacy Act, waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.
>
> If he fails to plead guilty or later withdraws his guilty plea, all statements made by the defendant in connection with this plea and any leads derived therefrom shall be admissible for any and all purposes.

Id. at 13–14. Judge Wood inquired whether Godwin's and Ms. Copeland's signatures were on the plea agreement and addendum and whether Godwin had reviewed and initialed every page of the agreement; Godwin answered in the affirmative. Id. at 14–15. Judge Wood asked Ms.

Copeland and Godwin if AUSA Thompson's summarization of the plea agreement was consistent with the agreement Ms. Copeland negotiated and Godwin signed, and they stated it was. Id. at 15. Godwin affirmed he had read the agreement before he signed it and no one had made him any promises about the outcome of his case, other than the provisions of his plea agreement. Id. at 15–16.

Judge Wood then asked Godwin whether he wished to still plead guilty to a lesser-included offense of count of the indictment because he was in fact guilty of this offense, and he answered in the affirmative. Id. at 17. Judge Wood also asked Godwin whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did. Id. Judge Wood determined Godwin's offer to plead guilty was "knowing" and "voluntary." Id. at 18. Godwin agreed. Id.

During the plea hearing, AUSA Thompson provided the factual basis for Godwin's plea agreement by calling TFO Gammon to testify. Id. at 18–23. TFO Gammon stated law enforcement conducted a controlled buy from Godwin using a confidential informant who had called Godwin while law enforcement officers were present. Id. at 19–20. TFO Gammon also stated that the substances the confidential informant brought back to agents tested positive as being controlled substances. Id. at 22–23. TFO Gammon also testified that Godwin was recorded on telephone calls while at Ware County Jail during which he described distributing methamphetamine to the informant. Id. TFO Gammon's testimony also revealed that Godwin had been speaking with people who had been identified as Government witnesses for the trial and Godwin and the witnesses discussed meetings the witnesses had had with law enforcement officers. Id. at 23. Godwin stated he did not disagree with anything TFO Gammon presented and admitted to the truth of TFO Gammon's testimony. Id. at 24. Judge Wood accepted

Godwin's guilty plea, adjudged him guilty of a lesser-included offense of count 1 of the indictment, and directed the probation officer to prepare a PSR. Id.

To be clear, Judge Wood informed Godwin at the outset of the Rule 11 hearing that the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Godwin wanted to do after consultation with his attorney. After telling Godwin he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Godwin confirmed that no one was forcing him to plead guilty and pleading guilty was what he wanted to do. Judge Wood discussed the specific rights Godwin was afforded if he chose to persist with a not guilty plea and advised Godwin he would waive those rights if he pleaded guilty and she accepted his plea. Godwin stated that he had spoken with Ms. Copeland about the facts and law of his case, including the plea agreement. Godwin verified that AUSA Thompson's summary of the plea agreement was consistent with the agreement he had signed. Judge Wood asked Godwin whether he wanted to plead guilty because he was, in fact, guilty of the lesser-included offense of count 1 of the indictment, and he answered in the affirmative. Godwin declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Godwin's guilty plea was knowing and voluntary. TFO Gammon then provided a factual basis for Godwin's plea, and Godwin agreed with the Government's factual basis. Judge Wood accepted Godwin's plea and adjudged him guilty of the lesser-included offense.

Any contention by Godwin that Ms. Copeland rendered ineffective assistance during the plea proceedings is belied by the record and without merit. If Godwin had not entered a plea agreement, proceeded to trial on the three counts of the indictment, and been convicted on these

counts, he would have faced a Guidelines' range of 262 to 327 months' imprisonment. Doc. 66 at 20. The probation officer noted that a conviction on count 2 would not impact the advisory Guidelines range and a conviction on count 3 would have subjected Godwin to a statutory term of at least 10 years and up to life imprisonment and an advisory Guidelines range of 360 months to life in prison. Id. But Godwin pleaded guilty to a lesser-included offense of count 1 of the indictment, resulting in a Guidelines range of 210 to 240 months' imprisonment with a statutory maximum of 20 years' imprisonment. Doc. 82 at 151. Judge Wood sentenced Godwin to 188 months' imprisonment on that count, which was well below the advisory Guidelines range and the statutory maximum sentences. Doc. 66 at 20; Doc. 3.

What is more, the record before the Court, including the statements that Godwin made under oath and under penalty of perjury, contradicts any suggestion that Ms. Copeland's assistance during the plea process was ineffective and any suggestion that his plea was not entered into knowingly and voluntarily. Further, and most importantly, Godwin has failed to show that not accepting the plea would have been rational under the circumstances. Martinez, 684 F. App'x at 922. Godwin merely offers conclusory or contradicted allegations in this regard. See Doc. 92 at 22 (Godwin's declaration that he asked his sister to tell Ms. Copeland he wanted to proceed to trial and that he told Ms. Copeland he wanted to go to trial a few times, yet providing nothing indicating any such desire would have been rational under the circumstances).

Godwin has not shown that his entry of a guilty plea was an adverse effect of any alleged conflict. See Kennedy, 799 F. App'x at 700 ("In the guilty-plea context, [courts] look to whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty."). Accordingly, Godwin has not shown that Ms. Copeland rendered ineffective assistance of

counsel and Godwin is not entitled to his requested relief. The Court should **GRANT** Respondent's Motion to Dismiss and **DENY** this portion of Godwin's Motion.

## III. Cumulative Error

Godwin contends the totality of errors warrants collateral relief, citing the cumulative error principle. Doc. 92 at 7.

"The cumulative error principle" can apply to post-conviction ineffective assistance of counsel claims, but the analysis only applies to "matters determined to be in error, not the cumulative effect of non-errors." Valencia-Trujillo v. United States, 2017 WL 3336491, at *17 (M.D. Fla. Aug. 4, 2017) (citing United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful error, there can be no cumulative effect compelling reversal.")). "'For the totality of the errors to warrant collateral relief, [movant] must show that the circumstances rendered the [proceeding] fundamentally unfair.'" Id. (quoting United States v. Battle, 264 F. Supp. 2d 1088, 1209 (N.D. Ga. 2003) (denying § 2255 claim of cumulative error)).

As Godwin fails to show any error in the prosecution and defense of his case, the cumulative error principle has no application. The Court should **DENY** this portion of Godwin's § 2255 Motion, as amended.

## IV. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Godwin leave to appeal *in forma pauperis*. Though Godwin has not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context

must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v.

McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the submissions in this case and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Godwin a Certificate of Appealability, Godwin is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Godwin's § 28 U.S.C. § 2255 Motion, as amended. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Godwin *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 14th day of July, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA